**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Guy Patrick Mercado,<br><br>               Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>               Defendant. | No. CV-20-00192-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Plaintiff Guy Patrick Mercado's appeal from the Commissioner of the Social Security Administration's (SSA) denial of social security disability benefits for Claimant Barbara Ann McCoy-Nelson, who has since passed away (Doc. 16). The appeal is fully briefed (Doc. 19, Doc. 20), and the Court now rules.

**I.    BACKGROUND**

The issues presented in this appeal are whether substantial evidence supports the Administrative Law Judge's (ALJ) determination that Claimant was not disabled from June 27, 2015 to October 31, 2017 and whether the ALJ applied the correct legal standard when considering the evidence. (*See* Doc. 16).

    **A.    Factual Overview**

Claimant was born in August 1956 and had a high school education. (Doc. 13-3 at 42; Doc. 13-4 at 125). She had past relevant work experience as a sales associate and office manager. (Doc. 13-3 at 41). Claimant filed her most recent application for social security

disability benefits on September 8, 2015, for disabilities beginning on June 27, 2015.[1] (*Id.* at 33). As relevant here, Claimant suffered from lumbosacral spondylosis, degenerative disk disease of the lumbar spine, chronic obstructive pulmonary disease (COPD), obesity, and mental disorders including anxiety and depression. (*Id.* at 37). On November 1, 2017, Claimant was diagnosed with terminal breast cancer and passed away approximately three months later. (*Id.* at 33, 37).

In October 2018, an ALJ issued a partially favorable decision, finding Claimant disabled as of November 1, 2017, but not sooner. (*Id.* at 42–43). The SSA Appeals Counsel denied a request for review of that decision and adopted the ALJ's decision as the agency's final decision. (*Id.* at 6).

### B. The SSA's Five-Step Evaluation Process

To qualify for social security benefits, a claimant must show she "is under a disability." 42 U.S.C. § 423(a)(1)(E). A claimant is disabled if she suffers from a medically determinable physical or mental impairment that prevents her from engaging "in any substantial gainful activity." *Id.* § 423(d)(1)–(2). The SSA has created a five-step process for an ALJ to determine whether the claimant is disabled. *See* 20 C.F.R. § 404.1520(a)(1). Each step is potentially dispositive. *See id.* § 404.1520(a)(4).

At the first step, the ALJ determines whether the claimant is "doing substantial gainful activity." *Id.* § 404.1520(a)(4)(i). If so, the claimant is not disabled. *Id.* Substantial gainful activity is work activity that is both "substantial," involving "significant physical or mental activities," and "gainful," done "for pay or profit." *Id.* § 404.1572(a)–(b).

At the second step, the ALJ considers the medical severity of the claimant's impairments. *Id.* § 404.1520(a)(4)(ii). If the claimant does not have "a severe medically determinable physical or mental impairment," the claimant is not disabled. *Id.* A "severe

---

[1] Claimant previously applied for disability benefits on February 25, 2013 (Doc. 13-4 at 6–7), and an ALJ determined that Claimant was not disabled on June 26, 2015 (*Id.* at 98–115). The ALJ in the instant claim determined that changed circumstances existed to rebut the presumption of continuing nondisability. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988) ("The claimant, in order to overcome the presumption of continuing nondisability arising from the first administrative law judge's findings of nondisability, must prove 'changed circumstances' indicating a greater disability." (citation omitted)). (Doc. 13-3 at 34).

impairment" is one which "significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are "the abilities and aptitudes necessary to do most jobs." *Id.* § 404.1522(b).

At the third step, the ALJ determines whether the claimant's impairment or combination of impairments "meets or equals" an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, before proceeding to step four, the ALJ must assess the claimant's "residual functional capacity" (RFC). *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [her] limitations." *Id.* § 404.1545(a)(1). In assessing the claimant's RFC, the ALJ will consider the claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [the claimant] can do in a work setting." *Id.*

At the fourth step, the ALJ uses the RFC to determine whether the claimant can still perform her "past relevant work." *Id.* § 404.1520(a)(4)(iv). The ALJ compares the claimant's RFC with the physical and mental demands of the claimant's past relevant work. *Id.* § 404.1520(f). If the claimant can still perform her past relevant work, the ALJ will find that the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At the fifth and final step, the ALJ determines whether—considering the claimant's RFC, age, education, and work experience—she "can make an adjustment to other work." *Id.* § 404.1520(a)(4)(v). If the ALJ finds that the claimant can make an adjustment to other work, then the claimant is not disabled. *Id.* If the ALJ finds that the claimant cannot make an adjustment to other work, then the claimant is disabled. *Id.*

### C.     The ALJ's Application of the Factors

Here, at the first step, the ALJ concluded that Claimant had not engaged in substantial gainful activity since the alleged onset date of her disability. (Doc. 13-3 at 36).

At the second step, ALJ determined that Claimant's physical impairments were severe, but determined that Claimant's mental impairments were non-severe prior to November 1, 2017. (*Id.* at 37). The ALJ noted that prior to November 1, 2017,

> [C]laimant had no more than mild limitations in understanding, remembering or applying information, mild limitations interacting with others, mild limitations maintaining concentration, persistence and pace, and mild limitations adapting or managing oneself. She could maintain attention and concentration as well as pace to complete job tasks. She was independent in self-care including personal hygiene and taking medications. She engaged in part-time work activity during that time and interacted appropriately with others on a regular basis, and she was able to avoid hazards in the work place.

(*Id.*).

At the third step, the ALJ determined that Claimant's impairments did not meet the severity of one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*). After evaluating Claimant's RFC, the ALJ concluded that Claimant could perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) before November 1, 2017. (*Id.* at 38). After November 1, 2017, the ALJ found that Claimant had the RFC to perform a limited range of sedentary work. (*Id.* at 40).

In determining Claimant's RFC, the ALJ concluded that "[C]laimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not fully supported prior to November 1, 2017." (*Id.* at 39). The ALJ also gave "less weight" to the evaluation of advanced practice registered nurse Sharon Clay-Keith, who treated Claimant and opined that Claimant would miss five or more days per month as a result of her mental impairments and treatment (Doc. 13-11 at 48, Doc. 13-3 at 39–40). The ALJ afforded "partial weight" to the opinion of Dr. James Beach, D.O., who "assessed moderately severe to severe pain and fatigue." (Doc. 13-3 at 40). The ALJ afforded "more weight" and "greater weight" to the opinions of Dr. Beverly Yoches, Psy.D., who stated that "it appeared that [Claimant's] symptom presentation was exaggerated," and state agency reviewing physicians, respectively. (*Id.*).

At the fourth step, the ALJ found that prior to November 1, 2017, Claimant could perform past relevant work as a sales associate and office manager. (*Id.* at 41). Accordingly, the ALJ determined that Claimant was not disabled prior to that date. (*Id.* at 42).

At the fifth step, the ALJ concluded that after November 1, 2017, given Claimant's

age, education, work experience, and RFC, no jobs existed in significant numbers in the national economy that she could have performed. (*Id.*). Accordingly, the ALJ determined that Claimant was disabled as of November 1, 2017. (*Id.*).

## II. LEGAL STANDARD

This Court may not overturn the ALJ's denial of disability benefits absent legal error or a lack of substantial evidence. *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018). "Substantial evidence means . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)). On review, the Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (quoting *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014)). The ALJ, not this Court, draws inferences, resolves conflicts in medical testimony, and determines credibility. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). Thus, the Court must affirm even when "the evidence admits of more than one rational interpretation." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The Court "review[s] only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison*, 759 F.3d at 1010.

## III. DISCUSSION

Plaintiff raises three potential errors in the ALJ's analysis: (1) the ALJ did not afford sufficient weight to the opinion of Clay-Keith, who treated Claimant, and instead afforded greater weigh to Dr. Yoches and state agency reviewing physicians; (2) the ALJ did not provide specific and legitimate reasons for rejecting the assessment of Dr. Beach; and (3) the ALJ improperly required objective evidence to corroborate Claimant's symptom testimony. The Court addresses each in turn.

### A. Opinion of APRN Clay-Keith

Plaintiff first argues that the ALJ erred by discounting the opinion of Clay-Keith. (Doc. 16 at 13). Beginning in April 2015, Clay-Keith noted that Claimant's mood was "depressed, dysphoric, irritable, and displaying low energy"; diagnosed Claimant with a major depressive disorder; and increased Claimant's anti-depressant prescriptions. (Doc. 13-11 at 62). Clay-Keith continued to treat Claimant for symptoms of depression and anxiety and adjusted her medications until January 2016 (*Id.* at 120, 128, 136, 146, 149, 153, 158, 159), at which point Claimant began treatment at Southwest Behavioral & Health Services (Doc. 13-13 at 2). On October 27, 2015, Clay-Keith completed a questionnaire in which she indicated that Claimant suffered from major depression, and based on her physical and mental impairments, Claimant would be off task more than 30% of the time during a 40-hour work week, would be absent from or unable to complete work 5 or more days per month, and would be expected to perform for less than 50% of the time during a work week. (Doc. 13-11 at 48).

The ALJ decision stated that Clay-Keith's "opinion was given less weight for the period prior to November, 1, 2017 because the greater record, including [Claimant's] ability to perform work activity for nearly 12 consecutive months leading up to that time, fails to support greater than minimal mental limitations prior to that time." (Doc. 13-3 at 40). Plaintiff argues that the record does not support the ALJ's conclusion. (Doc. 16 at 13–17). The Court disagrees.

As an advanced practice registered nurse, Clay-Keith falls under 20 C.F.R. § 404.1513(d)'s definition of an "other source[]" of medical evidence.[2] An ALJ may discount testimony from such "other sources" if the ALJ "gives reasons germane to each witness for doing so." *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). Here, substantial evidence supports the ALJ's determination that Claimant's work activity undercuts Clay-Keith's evaluation.

Specifically, the ALJ cited a form that Claimant completed describing her work

---

[2] The SSA amended 20 C.F.R. § 404.1513 in January 2017, but the new regulations are not effective for claims filed before March 27, 2017.

background, and the ALJ's decision notes that "although [Claimant] indicated her jobs often ended because she could not do the work, she held three jobs and consistently worked for almost 12 continuous months from December 21, 2016 through October 9, 2017." (Doc. 13-3 at 36). These three jobs ranged from December 2016–April 2017, April 2017–July 2017, and August 2017–October 2017. (Doc. 13-7 at 711). The ALJ was free to conclude that this history of work activity belied Clay-Keith's evaluation, and Plaintiff's arguments to the contrary are unpersuasive.

First, Plaintiff argues that "the ALJ decision contains its own refutation, because the ALJ recognized that although [Claimant] engaged in numerous work attempts, none were successful, and [Claimant] did not perform any substantial gainful activity since the original disability onset date." (Doc. 16 at 14).

But work activity that does not rise to the level of substantial gainful activity may still evince a lack of a disability and provide a basis to discount a contrary opinion. *See* 20 C.F.R. § 404.1571 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did."). For this reason, Plaintiff's arguments relying on the definition of substantial gainful activity and the calculation the ALJ used to determine whether Claimant engaged in substantial gainful activity miss the point. (*See id.* at 14–15). In this case, the ALJ determined that Claimant's work activities, even though insufficient to constitute substantial gainful activities, were inconsistent with Clay-Keith's evaluation.

Next, Plaintiff notes that the work background form Claimant completed indicates that Claimant quit one job because she "couldn't do the work," was fired from the second for being "too slow" and "not perform[ing] as needed," and was fired from the third for being "too slow." (Doc. 13-7 at 711). Nothing in this form, however, indicates that Claimant's performing "too slow" or otherwise not "do[ing] the work" was the result of any mental impairments and, therefore, does not contradict the ALJ's conclusion.

Plaintiff also cites two provider notes from Southwest Behavioral & Health Services to demonstrate that Claimant's mental condition negatively impacted her work

performance. A May 2016 provider note states that Claimant reported she had "some stress with a specific co-worker" and sometimes had "outburst of crying when she fe[lt] overwhelmed." (Doc. 13-13 at 57). This report, however, does not negate the evidence the ALJ considered in reaching his conclusion. Moreover, that same provider note also states that Claimant described her mood as "Okay," and Claimant "sa[id] overall she is doing well," "denie[d] persistent depressed mood," and "ha[d] good days and bad days." (*Id.*). It also describes Claimant's symptoms as only "moderate." (*Id.* at 58). An August 2016 provider note states that Claimant had "quit one of her jobs due to stress and the problems with scheduling–she fear[ed] that her mood symptoms increased as a result of the job." (*Id.* at 77). But Claimant's stated fears do not create a medical opinion necessitating a conclusion contrary to the ALJ decision.

Aside from the evidence that Claimant had performed work, the ALJ decision also notes that the record does not indicate that Claimant had more than mild limitation in her personal life and that she did not have trouble caring for herself, that a mental status exam performed on November 28, 2016 yielded normal results, and progress notes from May 12, 2016 through September 21, 2017 showed Claimant's symptoms improving with treatment (Doc. 13-3 at 36, 37, 39), all of which support the ALJ's conclusion. The ALJ also afforded greater weight to the opinions of Dr. Yoches and state agency reviewing physicians, whose opinions were consistent with this evidence.

Dr. Yoches described that Claimant was able to complete the tasks of daily life without assistance, and "[i]t appeared that [Claimant's] symptom presentation was exaggerated." (Doc. 13-11 at 52, 54). *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601–02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities a specific and legitimate reason to discount the treating physician's opinion). And, as the ALJ noted, the state agency reviewing physicians' reports concluded that Claimant's mental condition was not severe, and Claimant could perform sedentary work. (Doc. 13-3 at 40). *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians

may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

In sum, substantial evidence support's the ALJ's decision to afford lesser weight to Clay-Keith's evaluation and more weight to Dr. Yoches and state agency reviewing physicians. Accordingly, the Court does not find reversal appropriate on these grounds.

### B. Opinion of Dr. Beach

Next, Plaintiff argues that the ALJ erred by giving only "partial weight" to the opinion of Dr. Beach. (Doc. 16 at 17–18). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Garrison*, 759 F.3d at 1012 (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)). The ALJ must also apply the factors set forth in 20 C.F.R. § 404.1527(c)(2)(i)–(ii) and (c)(3)–(6). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Garrison*, 759 F.3d at 1012 (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). In other words, "an ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012–13.

Here, the ALJ failed to provide the specific and legitimate reasoning required. The ALJ's entire discussion of Dr. Beach's opinion is as follows:

> In a functional assessment dated October 28, 2015, Dr. Beach diagnosed chronic pain syndrome, arthralgias, paresthesias, lumbar radiculopathy and spondylosis, major depressive disorder and generalized anxiety disorder, COPD with shortness of breath. He assessed moderately severe to severe pain and fatigue. He said [Claimant] could sit for 15–20 minutes at a time and for a total of 4 hours per 8-hour day, and stand and walk for 10–15 minutes at a time and for a total of 4 hours per 8-hour day. He added that she required frequent changes in position or every 5–10 minutes, and that she had poor concentration due to pain. He estimated she could lift and carry 5 pounds occasionally and rarely carry more. He also said she could rarely stoop, squat, crawl or climb, and only occasionally reach. He also listed environmental restrictions.

> That opinion was given partial weight based on Dr. Beach's treatment relationship with the claimant, but only to the extent it supports the restrictions and limitations outlined in the residual functional capacity for the period prior to November 1, 2017.

(Doc. 13-3 at 40 (citation omitted)). Aside from a general reference to "Dr. Beach's treatment relationship with" Claimant, this discussion does not provide any specific or legitimate reasoning supported by substantial evidence; it is instead simply a summary of Dr. Beach's evaluation followed by a conclusion. *See Weiskopf v. Berryhill*, 693 F. App'x 539, 541 (9th Cir. 2017) ("The ALJ recited portions of treating physicians' treatment notes and then simply stated their opinions of . . . functional capacity were inconsistent with the notes. The ALJ failed to explain why the conclusion she drew from the treatment notes . . . makes any more sense than the treating physicians' conclusions."). Assuming the ALJ's reference to "Dr. Beach's treatment relationship with the claimant" refers to the fact that Dr. Beach did not have an extensive history of treating Claimant, that is but one of several factors the ALJ was required to consider. *See* 20 C.F.R. § 404.1527(c)(3)–(6).

The Commissioner attempts to justify the ALJ's conclusion with specific reasoning and references to the administrative record found nowhere in the ALJ's decision. The Court, however, cannot assume the ALJ's decision relied on the Commissioner's post hoc rationale. *See Garrison*, 759 F.3d at 1010; *Bennett v. Colvin*, 202 F. Supp. 3d 1119, 1134 (N.D. Cal. 2016) ("[N]one of these reasons were offered by the ALJ in his decision, and so they cannot be considered by this Court."). Accordingly, the ALJ erred by failing to set forth specific and legitimate reasoning supporting his conclusion.

Even when an ALJ errs, however, this Court will not reverse if the error is harmless. *See Marsh v. Colvin*, 792 F.3d 1170, 1172 (9th Cir. 2015). "ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination'" or a court "can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id.* at 1173 (quoting *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006)).

Here, the Court is unable to make a finding of harmlessness. Assuming, as required,

that the ALJ fully credited Dr. Beach's report, which conflicted with the reports on which the ALJ relied, the ALJ's ultimate nondisability determination may have been different. *See Bennett*, 202 F. Supp. 3d at 1134 ("This opinion appears to be in conflict with the ALJ's RFC determination, and therefore is not inconsequential to it."). Accordingly, the Court finds that the ALJ decision should be vacated on this ground.

### C.    Claimant's Symptom Testimony

Finally, Claimant argues that the ALJ applied the wrong legal standard when evaluating her subjective symptom statements. (Doc. 16 at 21).

The Ninth Circuit has established a two-step analysis for an ALJ to determine whether to credit a claimant's subjective symptom testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15). If the claimant presents such evidence, the ALJ then evaluates the claimant's subjective complaints. *See id.* "In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Instead, an ALJ must provide "specific, clear, and convincing reasons" for doing so. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

Here, at the first step, the ALJ determined that Claimant's "medically determinable impairments could reasonably have been expected to cause [Claimant's] alleged symptoms." (Doc. 13-3 at 39). At the second step, the ALJ determined that Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not fully supported prior to November 1, 2017, for the reasons explained in [the ALJ] decision." (*Id.*).

The Court agrees with Plaintiff that Claimant was not required to "fully support" her statement with record evidence. *See Lacy v. Comm'r of Soc. Sec. Admin.*, No. CV-18-

04117-PHX-SPL, 2020 WL 1285948, at *2 (D. Ariz. Mar. 18, 2020), *order amended on reconsideration*, No. CV-18-04117-PHX-SPL, 2020 WL 2465706 (D. Ariz. May 13, 2020) ("Plaintiff's medical records did not need to *fully* support the severity of her reported symptoms.").

But assuming the ALJ decision's "fully supported" language can fairly be read as a statement that the record contains evidence contrary to Claimant's statement, rather than a statement of an improper legal standard, the ALJ still erred because "the ALJ did not elaborate on *which* [parts of the record] conflicted with *which* part of Claimant's testimony." *See Burrell*, 775 F.3d at 1138; *see also Nelson v. Comm'r of Soc. Sec. Admin.*, No. CV-19-08027-PCT-JZB, 2020 WL 1510332, at *3 (D. Ariz. Mar. 30, 2020) (holding that an ALJ decision stating that a claimant's "physical symptoms were also not fully supported by available evidence of record, specifically her reported activities of daily living," was not "specific, clear, and convincing").

The Ninth Circuit has made clear that courts "may not take a general finding . . . and comb the administrative record to find specific conflicts." *Burrell*, 775 F.3d at 1138. And "this Court has repeatedly rejected ALJ rationale that discussed medical evidence but provided no connection between that discussion and rejection of claimants' symptom testimony." *Nelson*, 2020 WL 1510332, at *3 (collecting cases).

Again, the Commissioner's brief in this appeal provides a comprehensive discussion of Claimant's medical records along with citations, as well as specific and legitimate reasoning that could form a sufficient factual predicate for discounting Claimant's symptom statements. (Doc. 19 at 23–25). But the ALJ decision does not. Accordingly, the Court finds that vacating the decision is appropriate on this ground as well.

### D.  Further Proceedings

Given the errors in the ALJ decision, Plaintiff urges the Court to apply the credit-as-true rule and remand the case for an award benefits without further administrative proceedings. (Doc. 16 at 24).

"A district court may reverse the decision of the Commissioner of Social Security,

with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (internal citations, quotations, and alteration omitted). "Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). Here, despite the ALJ's legal error, the record contains conflicting evidence best resolved by the ALJ; therefore, a remand is appropriate.

As the Commissioner points out, Dr. Beach's evaluation of Claimant's limitations is inconsistent with other medical evidence in the record. For example, Dr. Yoches stated in her report that she believed that Claimant was exaggerating her symptoms. (Doc. 13-11 at 54). Dr. David Wilson, M.D., who examined Claimant at AZ Neurologists & Spine Specialists, observed that Claimant's MRI demonstrated only "mild degenerative changes" and that there was "no evidence of significant neutral compression or acute destabilizing injury." (Doc. 13-12 at 59). He further stated that "[t]here [was] no radiographic explanation for [Claimant's] chronic back pain" and "suspect[ed] some psychosocial factors may be at play." (*Id.*). Further, Claimant's statements regarding the severity of her condition, specifically that her symptoms commonly required her to remain in a lying position because moving caused her pain (Doc. 13-7 at 118), are inconsistent with the work she performed during the period relevant to her disability claim (*Id.* at 192) and her statements to Dr. Yoches that she was able to tend to her daily tasks and care for herself (Doc. 13-11 at 52).

The Court does not take a position regarding the ultimate question of Claimant's disability. However, these uncertainties in the record require resolution by the ALJ, and the Court will, accordingly, remand the case to the ALJ to reach a new determination.

## IV.   CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ decision is **VACATED** and the case is

**REMANDED** for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated this 8th day of February, 2021.

James A. Teilborg
Senior United States District Judge